IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA J. BREWER,

    **Plaintiff,**

    v.

        Civil Action 2:19-cv-5200
        Judge Edmund A. Sargus, Jr.
        Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Angela J. Brewer, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 10). No Reply has been filed. For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff filed her application for disability insurance benefits on March 29, 2016, alleging that she has been disabled since September 30, 2015, due to fibromyalgia and low blood

1

pressure. (R. at 190, 214.) Plaintiff's application was denied initially and upon reconsideration. (R. at 120-128; 130-136.) On December 3, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 29-49.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-7.) Plaintiff timely commenced the instant action. (ECF No. 1.)

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing on September 17, 2018, that she was married and lived with her husband and adult son. (R. at 59.) She had a driver's license and drove sometimes, including to her daughter's house twice a week to visit her grandchildren and to her mother's house once a week. (R. at 60.) Plaintiff confirmed that she has a high school education. (R. at 61.) She testified that she worked at Auto Zone for over eighteen years as an order selector and also did stocking and receiving. (*Id.;* R. at 74.)

When asked why she had been unable to work since her alleged onset date, Plaintiff stated that the "slightest things" cause pain in her back and neck and her hands hurt. (R. at 65.) She explained that the pain in her back can cause her chest to hurt and she can't breathe. (*Id.*) Her back pain encompasses her whole back but is focused in her shoulder blades. (*Id.*) She testified that her back pain never goes away. (*Id.*) Her hands cramp up when she is doing things like the dishes and she has to quit because they hurt. (*Id.*) Standing causes her legs to hurt and she has to sit down. (R. at 65-66.) Her shoulder and back pain causes chest pain and shortness

of breath every day. (R. at 66-67.) She feels like she is having a heart attack. (R. at 67.) She has pain in her neck that limits her ability to turn her head. (*Id.*) Issues with her legs and feet make it difficult to go up and down steps. (*Id*.) She experiences pain in her legs and feet that feel like she is being stabbed. (R. at 67-68.) She has difficulties with balance, experiences falls, but does not use a cane. (R. at 68.)

Plaintiff explained that she was not taking medication for her fibromyalgia but had taken Lyrica and Gabapentin in the past. (R. at 68-69.) According to Plaintiff, she stopped taking these medications because of side effects. (R. at 69.) She was no longer seeing a chiropractor because her husband's insurance did not pay for it. (*Id*.)

She further testified that she gets headaches every other day that last for five to six hours. (R. at 70.) She takes over the counter ibuprofen for these headaches. (*Id*.) She does not take any medication or see a therapist for her depression. (*Id*.) She had been seeing Dr. Zimmerer every three months but her next appointment was scheduled at a four-month interval. (R. at 70-71.)

When asked how she spends her days, Plaintiff responded that she tries to "do a little bit of dishes." (R. at 71.) She testified that she does laundry and tries to vacuum about once a week. (*Id*.) She does not walk her dogs. (*Id.*) When she visits her grandchildren, she watches them play, and talks and watches television with them. (R. at 72.) Plaintiff testified that she was limited in how long she was able to sit in a chair comfortably and tried to get up every 25 to 30 minutes. (*Id*.) She spends most of her days watching television but has problems maintaining

attention and concentration. (*Id*.) A hot bath makes her pain better and she takes about three to four baths a day. (R. at 73.) Her activities make her pain worse. (*Id*.)

In response to questioning by her representative, Plaintiff quantified her average pain level as eight on a scale of one to ten. (R. at 75.) Over the counter ibuprofen does not help her headaches. (*Id*.) Plaintiff estimated her daily activities consume about one hour of her day and beyond that she sits or walks around the house. (R. at 75-76.) She further estimated that she could walk for about twenty minutes at a time and could stand for about ten minutes before she would need to sit down because of pain in her legs. (R. at 76.)

### III.  RELEVANT MEDICAL RECORDS

Plaintiff's statement of error is addressed to the ALJ's evaluation of the opinions from her treating physician, Dr. Michael Zimmerer. (ECF No. 11, at p. 5.) Accordingly, the Court will confine its discussion of the medical evidence to Dr. Zimmerer's records as identified by Plaintiff.

On April 11, 2016, Dr. Zimmerer completed a disability questionnaire indicating that he had last seen Plaintiff one week before and identified her diagnosis as severe fibromyalgia. (R. at 288-289.) He indicated that she had not tolerated any anti-fibromyalgia therapy. (R. at 290.) In response to a question relating to the limitations imposed on her sustained work activity by Plaintiff's impairments, Dr. Zimmerer responded "She is disabled and it appears permanent." (*Id*.)

His attached progress notes confirm a primary diagnosis of fibromyalgia. (*See, e.g.,* R. at 293, 295, 299, 303, 307, 313, 319, 328, 330.)

>More specifically, attached treatment records dated December 14, 2015 state:
>
>She was given a slip to have her off work until potentially March 1st. I believe that her problem is fibromyalgia which seems to be quite severe and is extremely limiting in her ability to do normal activity. She gets significant exacerbations of her discomfort with mild or moderate activity. We will try to slowly increase her use of Lyrica to try to bring her pain under control. Hopefully we will be able to increase the dose to adequately control her discomfort without significant side effects.

(R. at 307.)

>Further, attached treatment records dated February 8, 2016, state:
>
>[Plaintiff] was advised that her fibromyalgia appears to be very severe in nature and has not responded to various medications including gabapentin, Lyrica, Cymbalta, and other products. She was given a slip of paper stating that she needs long-term disability and is unable to return to work for at least several months. It is unlikely that she will be able to return to work in the next year."

(R. at 300.)

>Finally, additional, more recent treatment records, dated May 23, 2017, state:
>
>She will stop the Lexapro and restart Cymbalta to see if that helps control some of her fibromyalgia. She is markedly limited in her ability to live a normal lifestyle. She is unable to do even sedentary activity due to severe diffuse myalgias. Small simple tasks increase her pain. She would be unable to do even sedentary job activities.

(R. at 412.)

## IV.   ADMINISTRATIVE DECISION

On December 3, 2018, the ALJ issued her decision. (R. at 29-49.) The ALJ found that Plaintiff met insured status requirements of the Social Security Act through March 31, 2021. (R.

5


at 29.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since September 30, 2015 her alleged onset date.  (*Id.*)  The ALJ found that Plaintiff had the severe impairments of fibromyalgia, migraine headaches, and depressive and anxiety disorders (20 CFR 404.1520(c)).  (R. at 31.)  She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 33.)  At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, it is determined that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a).  Fingering and handling with the upper extremities are each limited to no more than frequently. Balancing, climbing ramps and stairs, crawling, crouching kneeling and stooping, are each limited to no more than occasionally.  She cannot climb ladders, ropes, and scaffolds, and must avoid all exposure to humidity, moving mechanical parts, unprotected heights, wetness and extreme cold and heat. Mentally, the claimant retains the capacity for work with few changes in work setting where such changes are explained in advance.  Interaction with co-workers

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

and supervisors is limited to no more than frequently, and she cannot interact with members of the general public.

(R. at 39.)

Relying on the VE's testimony, the ALJ found that Plaintiff's limitations precluded her ability to perform her past relevant work. (R. at 46 - 47.) The ALJ concluded that Plaintiff could perform other jobs that exist in significant numbers in the national economy. (R. at 47-48.) She therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since September 30, 2015, the alleged onset date. (R. at 49.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

7

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff sets forth one statement of error. Specifically, Plaintiff contends that the ALJ improperly evaluated the opinion evidence provided by Dr. Zimmerer, her treating physician. (ECF No. 11.) Within this statement of error, Plaintiff raises two issues – (1) that Dr. Zimmerer's
treatment notes are "medical opinions" as defined by 20 C.F.R. § 404.1527(a)(1) and (2) that the ALJ failed to provide "good reasons" for failing to apply controlling weight to these treating source opinions.

### A. Treating Physician and Weighing of Opinion Evidence

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms,

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley*, 581 F.3d at 408.  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. A'ppx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

### B.  Dr. Zimmerer's Opinions

Here, the ALJ assigned "no weight" to Dr. Zimmerer's opinion, reasoning as follows:

The opinions of the claimant's physical therapist and primary care physician are entitled to no weight in assessing her physical functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability (Exhibits 1F/2, 2F/3, 13, 2;9, and 35, and 8F/16). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which does not document complaints of headaches prior to November 2017 (Exhibit 8F/11). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that the claimant's headaches were noted as not intractable in May 2018 (Exhibit 8F/8). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that the claimant does not experience chronic edema (Exhibits 2F/6, 9, 12, 20, 23, 26, 29, and 32, 3F/4, 4F/4, and 8F/3, 9, 11, 14-15, 17, 19, and 23). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that the claimant had negative and normal diagnostic imaging results of her cervical and lumbar spine (Exhibits 2F/53-54 and 67, and 7F/3 and 5). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that the claimant repeatedly had full range of motion of her back (Exhibits 2F/6, 12, 20, 23, 29, and 32 and 8F/9. 11, 15, 17, and 23). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, which documents that the claimant has normal gait with no ambulatory aid usage noted or reported (Exhibits 5F/5, 8F/23, and 5E/6). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above which documents that the claimant has normal coordination, range of motion, reflexes, strength, and tone, of her extremities (Exhibits 2F/6, 23 and 23, and 8F/23). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above which documents that the claimant smokes cigarettes, which requires significant usage of the fingers and hands (Exhibits 2F/4, 5F/2, and 8F/22). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above which documents that the claimant performs grooming, hygiene, and personal activities such as bathing, caring for her hair, dressing, feeding herself, shaving, and using the toilet independently on a daily basis, and without reminders (Exhibits 5F/3 and 5E/1-3). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above which documents that the claimant regularly consumes and prepares meals, and performs household chores and cleaning (Exhibits 5F/4 and 5E/1-2). These opinions are inconsistent and unsupported by the totality of the evidence, as discussed above which documents that the

> claimant provides food and water for pets (Exhibit 5E/1). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above which documents that the claimant has a driver's license, and she drives to places she needs to go (Exhibits 5F/2 and 4, and 5E/3). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above which documents that the claimant uses telephones (Exhibits 1E/2 and 5E/4). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above which documents that the claimant stated that prescribed medical is effective in ameliorating her physical impairments and related pain complaints (Exhibits 2F/6 and 8F/18). These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above which documents non-compliance with prescribed medication (Exhibit 2F/17), which would not be expected if the claimant's physical impairments and related symptoms are as severe as she purports as of the alleged onset date of disability. This evidence does not reasonably support further restriction in the claimant's residual functional capacity and could support a determination that she is less physically limited than set forth above as of the alleged onset date of disability. Accordingly, the opinions of the claimant's physical therapist and primary care physician are entitled to no weight in assessing her physical functional limitations, restrictions, and residual functional capacity as of the alleged onset date of disability.

(R. at 43-44.)

The ALJ properly discounted Dr. Zimmerer's opinions. First, the Court finds no merit to Plaintiff's argument that the ALJ's decision is "unreviewable" because she failed to identify or summarize Dr. Zimmerer's opinions. The ALJ referred to Exhibit 2F/3 which is Dr. Zimmerer's response on the disability questionnaire that Plaintiff was "disabled and it appears permanent." (R. at 43, 290.) Further, the ALJ cited to Exhibit 2F/13 which is Dr. Zimmerer's opinion that Plaintiff "needs long-term disability and is unable to return to work for at least several months." (R. at 43, 300.) Additionally, the ALJ referred to Exhibit 8F/16 which is Dr. Zimmerer's opinion that Plaintiff is "markedly limited in her ability to live a normal lifestyle" and "unable to do even sedentary job activities." (R. at 43, 412.)

Further, Dr. Zimmerer's response on the disability questionnaire that Plaintiff is disabled is a non-medical opinion on an issue reserved to the Commissioner of Social Security. Accordingly, it is entitled to no special deference. *See* 20 C.F.R. 404.1527(d)(2); Social Security Ruling 96-5p ("[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."); *Saulic v. Colvin*, No. 5:12CV2753, 2013 WL 5234243 at *9 (N.D. Ohio Sept. 16, 2013) (finding treating source's opinion about likely work absences did "not constitute a medical opinion"); *Arnett v. Astrue*, No. 5:08CV62-J, 2008 WL 4747209 at *5 (W.D. Ky. Oct. 17, 2008) (same).  The same is true of Dr. Zimmerer's more informal "opinions" scattered throughout his treatment notes suggesting the disabling nature of Plaintiff's condition.  (R. at 300, 307, 412.)   Not only are these "opinions" addressed to an issue reserved to the Commissioner, they are conclusory statements at best.  *See, e.g., Holden v. Comm'r, Soc. Sec. Admin.*, No. 3:16-2497, 2018 WL 1427112, at *4 (M.D. Tenn. Mar. 22, 2018), *report and recommendation adopted sub nom. Holden v. Soc. Sec. Admin.*, No. 3:16-CV-02497, 2018 WL 1763208 (M.D. Tenn. Apr. 12, 2018) (the conclusory statement that Plaintiff's symptoms represent a "disabling medical condition" was properly discounted by the ALJ).

Moreover, the ALJ provided good reasons for failing to apply controlling weight to Dr. Zimmerer's opinions.  As Plaintiff explains it, "[w]here the ALJ made her mistake was in the lack of consideration given to the unique nature of fibromyalgia."  (ECF No. 11, at p. 10.)   The Sixth Circuit Court of Appeals has determined that "fibromyalgia is an unusual impairment in that its symptoms are often not supportable by objective medical evidence." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234,

243, (6th Cir. 2007) (citing *Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 820 (6th Cir. 1988)). Therefore, an ALJ might arguably err if she discounts a treating physician's opinion about a fibromyalgia patient solely because that opinion is not supported by objective medical evidence.

In this case, however, the ALJ did not exclusively rely on a lack of objective findings in discounting Dr. Zimmerer's opinion. Rather, the ALJ noted at some length that the opinion was inconsistent with the totality of the evidence. (R. at 43-44.) Specifically, as a contrast to Dr. Zimmerer's opinion that Plaintiff was "markedly limited in her ability to live a normal lifestyle," the ALJ noted Plaintiff's daily activities at some length. (Id., R. 412.) The ALJ summarized those activities as follows:

> The claimant smokes cigarettes, which requires significant usage of the fingers and hands (Exhibits 2F/4, 5F/2, and 8F/22). The claimant performs grooming, hygiene, and personal care activities such as bathing, caring for her hair, dressing, feeding herself, shaving, and using the toilet independently on a daily basis, and without reminders (Exhibits 5F/3 and 5E/1-3). The claimant regularly consumes and prepares meals, and performs household chores, and cleaning (Exhibits 5F/4 and 5E/1-2). The claimant provides food and water for pets (Exhibits 5E/1). The claimant has a driver's license, and she drives to places she needs to go (Exhibits 5F/2 and 4m and 5E/3). The claimant uses telephones (Exhibits 1E/2 and 5E/4).

(R. at 41.)

This summary is an accurate representation of the record and Plaintiff does not contend otherwise. Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Zimmerer's opinion.

Further, the ALJ also cited Plaintiff's non-compliance with prescribed medication, despite its acknowledged effectiveness. The ALJ summarized this issue as follows:

14

> The claimant stated that prescribed medical is effective in ameliorating her physical impairments and related pain complaints (Exhibits 2F/6 and 8F/18). The evidence documents non-compliance with prescribed medication (Exhibit 2F/17), which would not be expected if the claimant's physical impairments and related symptoms are as severe as she purports as of the alleged onset date of disability. This evidence does not reasonably justify additional physical functional limitations and restrictions, and could support a determination that the claimant is less physically limited than set forth above as of the alleged onset date of disability. Accordingly, there is no evidence of additional functional limitations and restrictions as of the alleged onset date of disability.

(*Id.*)

With respect to this issue, Plaintiff contends that the ALJ erred by not making a specific finding as to her non-compliance as required by Social Security Ruling 18-3p. There is no merit to this argument. Although that regulation went into effect before the ALJ made her decision in this case, it only applies where the ALJ finds that a claimant would be otherwise entitled to disability benefits. *Scharmer v. Comm'r of Soc. Sec.*, No. 1:18-CV-00872, 2020 WL 1861869, at *7 (W.D. Mich. Apr. 14, 2020) (citing SSR 18-3p (S.S.A.), 2018 WL 4945641 (October 2, 2018), at *2-3). That is not the case here.

Further, Plaintiff argues that the ALJ's discussion ignores her ongoing problems with side effects from the various medications, including weight gain and hair loss. While side effects less tolerable than the symptoms may, under circumstances, be a reasonable explanation for non-compliance, *see King o/b/o T.M.K.F. v. Comm'r of Soc. Sec.*, No. 17-12549, 2019 WL 2035590, at *11 (E.D. Mich. Feb. 6, 2019), *report and recommendation adopted sub nom. King on behalf of T.M.K.F. v. Comm'r of Soc. Sec.*, No. 17-12549, 2019 WL 1324230 (E.D. Mich. Mar. 25, 2019), as discussed, this is not the only factor considered by the ALJ in this case.

Finally, Plaintiff contends that the ALJ erred because she did not consider the frequency and length of time that Dr. Zimmerer provided treatment. This argument also is without merit. As noted above, there is no requirement that an ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley,* 394 F. App'x at 222.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   December 10, 2020                              /s/ *Elizabeth A. Preston Deavers*
                                                                                     Elizabeth A. Preston Deavers
                                                                                     Chief United States Magistrate Judge